Filed 6/23/23  In re O.M. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re O.M. et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B324157 (Super. Ct. Nos. 20JV00064, 20JV00065) (Santa Barbara County) |
| SANTA BARBARA COUNTY CHILD PROTECTIVE SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| MARCO M. et al., | |
| Defendants and Appellants. | |

Marco M. (father) appeals the juvenile court's order terminating his parental rights to his daughter, D.R. and selecting adoption as the permanent plan.  (Welf. & Inst. Code,

§ 366.26.)[1]  Lisa Z. (mother) separately appealed the juvenile court's orders as to D.R., and D.R.'s older half-sister, O.M. Mother's opening brief joins in father's arguments.  Father and mother's sole contention on appeal is that the Santa Barbara County Child Welfare Services ("CWS") and the juvenile court did not comply with the duty to inquire further whether the children are Indian children pursuant to the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C., § 1901 et seq.) and related California law.[2]  We conditionally affirm and remand for compliance with ICWA.

*Facts and Procedural History*

In April 2019, the San Diego County Child Welfare Services ("agency") filed a dependency petition pursuant to section 300, subdivision (b) on behalf of 9-year-old D.R. and 14-year-old O.M. The petition alleged mother suffered from mental illness and had recently been placed on an involuntary psychiatric hold pursuant to section 5150.   The children remained in mother's care.

At the detention hearing, mother's counsel stated that mother had submitted an ICWA-020 form and indicated she had no known Indian ancestry.  The dependency petition filed with the juvenile court also included an Indian Child Inquiry Attachment, ICWA-010 form, which indicated that mother denied having Indian ancestry.

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

[2] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many."   (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

In May 2019, the agency filed a jurisdiction/disposition report with the juvenile court. The report stated that mother was asked the following questions: "(1) Do you have any Native American heritage? [¶] (2) Do your grandparents or any other extended family have Native American heritage? Are you or any of your extended family members of an Indian tribe? [¶] (3) Have you or any of your family members ever received services from an Indian tribe, such as educational, financial, counseling, medical, etc.? [¶] (4) Have you or any of your family members ever participated in tribal activities, events, lived on [a] reservation, [or] spoken an Indian language?" Mother answered "no" to each of these questions.

The agency also sent an ICWA questionnaire to each of the children's fathers.[3] Father provided a written response and answered "no" to each of the questions. He did not identify anyone who may have additional information regarding possible Indian ancestry.

At the jurisdictional hearing, both fathers made their initial appearance and each denied having Indian ancestry. The juvenile court found that ICWA did not apply. The juvenile court also granted father's request for paternity testing.

In July 2019, the juvenile court conducted a contested jurisdictional and dispositional hearing and found father was D.R.'s biological father.

In January 2020, the agency moved to transfer the case to Santa Barbara County. The transfer out motion reflected the San Diego County Juvenile Court's finding that ICWA did not apply. In March 2020, the Santa Barbara County Juvenile Court accepted transfer of the case from San Diego County.

---

[3] The father of O.M. is not a party to this action.

3

In March 2021, CWS secured a protective custody warrant pursuant to section 340 and detained the children due to concerns regarding mother's paranoid behavior and failure to comply with her case plan. CWS filed a supplemental petition pursuant to section 387. At the hearing in April 2021, the juvenile court sustained the petition, removed the children from mother, and ordered reunification services for mother.

CWS subsequently prepared an ICWA matrix, which reflected that in March 2021, CWS interviewed mother who disclosed she was adopted and therefore was unsure of her heritage. Mother also stated that she had taken an Ancestry.com test, which "showed traces" of Indian ancestry. CWS spoke with two of mother's adult daughters, D.R.'s half siblings, who denied having Indian ancestry. CWS also spoke with maternal second cousin who did not have any information regarding mother's biological family but she reported that "as to the maternal adoptive family, no one in the family to be a registered member; however, they knew they had Navajo and Apache [a]ncestry." (*Sic*.)

In October 2022, at the section 366.26 hearing, the juvenile court denied mother's request for a contested hearing and terminated parental rights. At that same hearing, CWS reviewed the ICWA inquiry process to date and requested the juvenile court find that ICWA did not apply. The juvenile court did not expressly state the ICWA did not apply but made the requested finding as reflected in the "Minute Order/Findings and Orders."

*ICWA Inquiry and Notice*

Father and mother contend the orders terminating their parental rights should be conditionally reversed and the matter remanded to the juvenile court for further inquiry. We agree.

4

We generally review ICWA findings for substantial evidence.  (*In re J.K.* (2022) 83 Cal.App.5th 498, 504.)  "Because the material facts at issue here are undisputed, '"we review independently whether ICWA requirements have been satisfied."'"  (*Ibid.*)

ICWA defines an "'Indian child'" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."  (25 U.S.C. § 1903(4) & (8); § 224.1, subd. (a).)  The juvenile court and the county child welfare department have an affirmative and continuing duty to inquire whether a child subject to dependency proceedings is or may be an Indian child.  (§ 224.2, subd. (a); Cal. Rules of Court, rules 5.481(a) & 5.668(c).)

"'The continuing duty to inquire whether a child is or may be an Indian child "can be divided into three phases:  the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice."'"  (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 429.)

The duty to inquire begins with the initial contact and obligates the juvenile court and the child services agency to ask the child, parents, extended family members, and others who have an interest in the child, whether the child is, or may be, an Indian child.  (§ 224.2, subds. (a)-(c).)

The duty of further inquiry is triggered if the child services agency or the juvenile court has "reason to believe that an Indian child is involved in a proceeding."  (§ 224.2, subd. (e).)  The Legislature defined "reason to believe" as having "information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe.

5

Information suggesting membership or eligibility for membership includes, *but is not limited to*, information that indicates, but does not establish, the existence of one or more of the grounds for reason to know enumerated in paragraphs (1) to (6), inclusive, of subdivision (d)." (§ 224.2, subd. (e)(1), italics added.)

Those enumerated grounds are as follows: "(1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family informs the court that the child is an Indian child. [¶] (2) The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village. [¶] (3) Any participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child. [¶] (4) The child who is the subject of the proceeding gives the court reason to know that the child is an Indian child. [¶] (5) The court is informed that the child is or has been a ward of a tribal court. [¶] (6) The court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d).)

When the "reason to believe" threshold is reached, the requisite further inquiry includes, but is not limited to, interviewing the parents, extended family members, contacting the Bureau of Indian Affairs and State Department of Social Services for assistance in identifying the tribes in which the child may be a member or eligible for membership, contacting the tribes and any other person that may reasonably be expected to have information regarding the child's membership status or eligibility. (§ 224.2, subd. (e)(2)(A)-(C).)

Here, citing *In re Robert F.* (2023) 90 Cal.App.5th 492, (*Robert F.)* CWS contends it had no duty to inquire of extended family members about any Indian ancestry because the children were detained under a protective custody warrant pursuant to section 340, not section 306, which is the prerequisite to the section 224.2, subdivision (b) extended family member inquiry requirement.  (See *Robert F.*, at pp. 497, 500, 504, citing *In re Adrian L.* (2022) 86 Cal.App.5th 342 (conc. opn. of Kelley, J.).)

We need not decide whether we agree with the holding in *Robert F.* because even if there was no duty of initial inquiry, once information is received that suggests a child may be an Indian child, we do agree that the agency "cannot ignore the information."  (*Robert F.*, *supra*, 40 Cal.App.5th at p. 504.)  And even if a claim of "Indian ancestry" alone is insufficient to impose a duty of further inquiry,  (see *In re Austin J.* (2020) 47 Cal.App. 5th 870, 888-889), the cousin did not merely report the family had "Indian Ancestry."  She not only stated that the family "knew" there was Indian Ancestry, but she identified the two tribes by name.  The "reason to believe" standard "should be broadly interpreted."  (*In re S.R.* (2021) 64 Cal.App.5th 303, 317.)  The maternal cousin's certainty that the maternal family had Apache and Navajo ancestry gives reason to believe the children may be Indian children and triggers the duty to conduct a further inquiry.  (§ 224.2, subd. (e)(2)(A)-(C).)

The duty to conduct a further inquiry exists despite the fact that the ancestry is through mother's adoptive family.  ICWA and its application to Indian children is not limited solely to children who are the biological descendants of a federally recognized tribe. "Tribal membership is treated under the ICWA as a matter of political affiliation rather than racial origin . . . .  In incorporating

7

the ICWA requirements into state law, the California Legislature explicitly found and declared that tribal membership is a question of political affiliation and that a tribe's determination of its membership is binding on the state." (*In re B.R.* (2009) 176 Cal.App.4th 773, 783.)

"Because it had reason to believe an Indian child may be involved, the [agency] was obligated . . . to 'make further inquiry regarding the possible Indian status of the child' and to 'make that inquiry as soon as practicable.'" (*In re Rylei S.* (2022) 81 Cal.App.5th 309, 319.)

The agency failed to satisfy its duty. There is nothing in the record suggesting that the agency conducted any further investigation in response to the cousin's information. The agency did not attempt to verify this information with other family members nor did it make informal contact with the Navajo or Apache tribes.

The error was not harmless. There is no indication any effort was ever made to make additional inquiries of other known and readily available relatives regarding the cousin's information. The mother reported that her parents lived in Vista, California but the record does not show any attempt to contact them. In fact, it appears despite asking for and receiving this information from the cousin, the agency did nothing. "Because we do not know what we do not know" (*In re Rylei S.*, *supra*, 81 Cal.App.5th at p. 324) and because there is readily obtainable information that is likely to bear on whether D.R. is an Indian child, (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744) a limited remand is required.

*Disposition*

The judgment (orders terminating parental rights and selecting adoption as the permanent plan) is conditionally affirmed. The matter is remanded to the juvenile court for the limited purpose of allowing the agency and the juvenile court to satisfy their statutorily-mandated inquiry duties under section 224.2. If, after satisfying those duties, the juvenile court concludes that D.R. is not an Indian child, it shall enter a new order finding ICWA does not apply and the judgment (order terminating parental rights) shall become final as of that date. If, the juvenile court finds that D.R. is an Indian child, and that ICWA does apply, it shall enter an order to that effect and the judgment (order terminating parental rights) is reversed as of that date and the court shall hold a new section 366.26 hearing in compliance with ICWA and related California law.

NOT TO BE PUBLISHED.

CODY, J.

I concur:

GILBERT, P. J.

9

YEGAN, J., Dissenting:

I respectfully dissent. As I explained in my dissenting opinion in *In re J.K.* (2022) 83 Cal.App.5th 498, the Court of Appeal is tasked to affirm a judgment unless there has been a miscarriage of justice, in which case we reverse. There is no showing of an actual miscarriage of justice in this case. If there were some facts here that would cause a reasonable person to have a "reason to believe" the children were Indian children within the meaning of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C., § 1901 et seq.), I would not vote to conditionally reverse. Instead, there is only speculation that further inquiry may or may not reveal some evidence that the children are Indian children. This is insufficient to support a reversal of the juvenile court's judgment.

The goal of ICWA is laudable. However, I entertain a real doubt that the cases automatically reversing a judgment because of an ICWA violation accomplish the goal of ICWA. Instead, the delays caused by ICWA reversals are costly and in most cases, counterproductive. Dependent children need stability and a sense of permanency. They should not have to wait because of the delay caused by reversals of judgments which, in the vast majority of cases, will not result in placement with an Indian family.

Although we strive to uphold the letter and spirit of a statute, ICWA does not trump the Constitution. Appellate courts must follow the Constitutional mandate that reversal is only required where there is a miscarriage of justice. I would affirm.

NOT TO BE PUBLISHED.

YEGAN, J.

Gustavo E. Lavayen, Judge
Superior Court County of Santa Barbara

_____

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant, Marco M.

Jesse Frederic Rodriguez, under appointment by the Court of Appeal, for Defendant and Appellant, Lisa Z.

Rachel Van Mullem, County Counsel, Lisa A. Rothstein, Snr. Deputy, for Plaintiff and Respondent.